UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN T. SMITH,
        Plaintiff,

vs.                                      CIVIL NO.:  04-CV-72941-DT

COMMISSIONER OF                   HON. LAWRENCE P. ZATKOFF
SOCIAL SECURITY,                    MAG. JUDGE WALLACE CAPEL, JR.
        Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is recommended that the Court grant Plaintiff's Motion for Summary Judgment in part, deny Defendant's Motion for Summary Judgment, and remand this case for proceedings consistent with this Report.

**II.    REPORT**

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits [DIB].  Plaintiff filed for benefits on June 4, 1996, alleging disability since January 1994, due to a "spinal problem and depression." (TR 64-67). Benefits were initially denied on June 7, 1997, and upon reconsideration on January 27, 1998. (TR 46-48, 51-53).  A de novo hearing was held on August 18, 1998, before Administrative Law Judge [ALJ] Larry Timmon.  (TR 346-82).  In a decision dated September 23, 1998, the ALJ found that Plaintiff could perform "work that exists in significant numbers in the national economy." (TR 20-32).   Accordingly, Plaintiff was found not disabled.   The ALJ's decision became the

Commissioner's final decision when the Appeals Council denied review on June 16, 2001. (TR 10-11). The Plaintiff commenced this action for judicial review.[1]

### A.     PLAINTIFF'S TESTIMONY

Plaintiff testified that he was born July 12, 1961, and was thirty-seven at the time of the hearing. (TR 349). He stated that he was six foot, two inches tall and weighed two hundred and eighty pounds. (TR 349-50). He explained that his weight fluctuates and that a normal weight for him is two hundred and forty pounds. (TR 350). He stated that he is right-handed. Id.

Plaintiff testified that he has been married almost three years and has no children. Id. He stated that he currently lives in a house with his wife. Id. He stated that he graduated high school and attended two years of college studying "[c]limate control, heating and air conditioning, [and] auto mechanics," but never obtained a degree. (TR 350-51). He stated that he can read, write, add, and subtract without problems. (TR 351). He stated that he has never been in the military and currently is financially dependent on his wife. Id.

Plaintiff indicated that since his alleged onset in January of 1994, he has never applied for unemployment compensation. Id. He indicated that he filed a claim for worker's compensation and initially received payments, but then he had to go to court. (TR 351-52). He indicated that he won at trial, but that the case is in an appellate period. (TR 352). He stated that his last injury occurred on January 28, 1994. Id.

Plaintiff indicated that he was a full-time automotive mechanic at James Chevrolet for a year and a half from 1986-1987. (TR 354). He stated that he was also on his feet all day during that time, with similar lifting requirements. (TR 354-55). Plaintiff stated that in 1983 he worked full-time for

---

[1]Plaintiff requested and received more time to file his civil action by the Appeals Council. (TR 6-7).

Tower Service, a gas station, for about six to eight years as an automobile mechanic. (TR 355, 356). He stated that he also pumped gas and had similar lifting requirements as well. (TR 356). He stated that he also worked for two years full-time as a tow truck driver at Russell Service for AAA, making minimum wage. (TR 355). He stated that he also pumped gas and serviced tires there, but driving was his main duty. (TR 355-56). He stated that the heaviest he lifted there was seventy-five pounds. (TR 356).

He stated that in 1994 he was working as an automotive service manager, mechanic for K-Mart in Detroit.[2] (TR 353). He stated that he was responsible for training the mechanics. Id. He stated that he was responsible for hiring and firing individuals as well. (TR 376). He explained that he worked there full-time since August 1989 and was a salary employee at the rate of approximately $1002.00 biweekly. (TR 353). He stated that he did mechanic work as well as writing, stocking, and cleaning. (TR 353-54). He testified that he did various types of automotive work and was on his feet or bending over twelve hours a day. (TR 354). He indicated that he lifted over three hundred pounds in this capacity at times. Id. He stated that he left the job at the time of his last injury. (TR 353).

He stated that he is currently working one day a week for four hours at K-Mart as a door greeter. (TR 352). He indicated that he is paid five dollars and seventy-five cents at that job. Id. He stated that he has worked there since January 2. Id. He explained that at one point they gave him more hours, but that he had to drop the extra hours because he could not handle them. (TR 352-53).

Plaintiff indicated that he cannot work because of physical problems, as well as a mental impairment. (TR 357). He stated that he has depression and problems with his back. Id. He indicated that he has problems bending, lifting, pushing, and pulling. Id. He testified that his pain is in his mid

---

[2] He stated that he was certified in six categories of automotive repair. (TR 377). However, he is no longer certified because he did not renew the certification since 1994, which is required through the state. (TR 377-78).

3

to lower back and also radiates down his right leg. Id. He stated that he hurt himself at work, but that his pain did not get "real severe" until 1994. Id. He stated that he has not had surgery. (TR 357-58). He explained that he has radiculopathy with nerve damage. (TR 358).

Plaintiff indicated that he had to wear a back brace to drive to the hearing. Id. He stated that since 1994 his back pain has worsened overall, but at times it is better with therapy. Id. He stated that he has pain constantly all day, but that it worsens in the afternoon. Id. Plaintiff indicated that on a scale of one to ten, with ten being the most severe pain, his pain is normally at about an eight. (TR 358-59). He stated that he takes pain medication. (TR 359).

He testified that he also has carpal tunnel in his left hand and with his hand "falling asleep mainly when [he is] sleeping." Id. He also stated that he has a burning sensation in his wrist, which bothers him every day. Id. He stated that no surgery has been proposed recently for his carpal tunnel. (TR 364). He stated that he does not have any other physical problems. (TR 359).

He testified that his depression set in around 1994 and has worsened since then. (TR 365, 366). He explained that he has crying spells and has difficulty leaving the house, being in social situations, and meeting people in public. (TR 365, 366). He stated that he used to have suicidal thoughts, but now is in therapy to deal with those. (TR 366). He stated that his therapist is Dr. Huffman and he has been seeing her for about one year. Id. He stated that he no longer has an interest in doing anything due to his back. (TR 365). He testified that he has difficulty sleeping and the longest he can sleep for at one time is three hours. Id. He stated that he has to take medication and "get comfortable." Id. He stated that he does the exercises that were prescribed to him. Id.

Plaintiff testified that he does not drink alcohol anymore and has not for the past six or eight months. (TR 359-60). He stated that he can no longer drink due to the medication that he takes. (TR 359). He stated that prior to giving up alcohol he would drink one weekend once a month. (TR 360).

He stated that he does not take any illegal drugs. Id. He stated that his appetite has "not [been] very good lately." (TR 365). He stated that his energy level and self esteem are also low. (TR 366).

He testified that he takes forty milligrams of OxyContin three times a day as well as five milligrams of Roxidone, six to ten times a day for immediate relief of his symptoms. (TR 360). In addition, Plaintiff stated that he takes two hundred milligrams of Zoloft once a day. (TR 360-61). He stated that he is prescribed the Zoloft from a psychiatrist, Dr. Perodive, through his therapist, Dr. Huffman. (TR 367). He stated that he has only been on the Zoloft for about three months. Id. He also stated that he takes a pain pill, Loracel, five hundred milligrams as needed, which he indicated is "once in a great while." (TR 361). He also takes Visterol to counteract the side effects of OxyContin, (itching), and fifty milligrams of Sinequan to help him sleep.[3] Id. Plaintiff also reported side effects including drowsiness, lack of coordination, comprehension and concentration. (TR 362). He later stated that he does not know whether his memory problems and trouble concentrating are due to his depression or medications. (TR 366). He stated that he does not use an assistive device, with the exception of braces when he needs them. (TR 362).

Plaintiff testified that Dr. Jordan is his family doctor and he sees Dr. Zelt for pain management. Id. He stated that Dr. Zelt referred him about six to eight months ago to Burns Medical Center in Petosky to see a couple specialists. Id. They told him that he has degenerative discs and radiculopathy. (TR 363). He stated that he saw Dr. Huder, a neurosurgeon, there three or four times in early 1998 and also had an MRI. (TR 363-64). He stated that surgery is not an option with his nerve damage, but that he has had physical therapy. (TR 364). He stated that the physical therapy helped "somewhat." Id.

---

[3]Plaintiff also stated that he takes a couple of other medications to counteract the OxyContin and RoxiContin as they affect his stomach. (TR 361).

He stated that he gets along with people, but often gets agitated easily due to his pain. (TR 367). Plaintiff indicated that he visits with family off and on during the summer, but does not have any friends that he sees. Id. He then stated that he has a couple of friends, but only sees "them maybe once a month if that." Id. He stated that he goes grocery shopping with his wife once a week, but does not go out to the movies. (TR 367-68). He indicated that he does go out to eat occasionally. (TR 368). He stated that his legs give out and he falls down once in a while. Id. He indicated that when he goes out in public he feels panicky. (TR 374).

Plaintiff described an average day. (TR 368). He stated that he gets up in the morning and takes his medication. Id. He stated that he sees his wife off to work at about nine in the morning. Id. He then does some exercises and tries to go back to sleep. Id. He usually wakes back up at about two or three in the afternoon and his wife comes home about four or four thirty in the evening. Id. He then takes more pain medication and eats dinner. Id. He watches television after dinner and then goes to bed. Id. He explained that he spends most of the day laying down due to his pain. (TR 368, 375). He indicated that he alternates between sitting, standing, and laying down. (TR 368). Although, he stated he spends twelve hours a day lying down overall, with five to six of the eight hours while he is awake. Id.

Plaintiff indicated that lifting causes him back pain. (TR 369). He stated that he could only lift ten pounds without a significant increase in back pain. Id. He stated that he also has back pain associated with pushing and pulling. Id. Further, he stated that standing or sitting longer than a half hour to forty-five minutes also bothers him. Id. He stated that he could walk a quarter to a half mile. Id. He stated that bending also bothers him. (TR 369-70). However, he stated that reaching out does not bother him "really [] bad." (TR 370). He stated that he drives rarely because his medication causes him to lose concentration and "drift off." Id. He stated that he no longer has any recreational hobbies

and does not read. Id. He indicated that he has problems comprehending what he is reading so he no longer enjoys it. (TR 374). He stated that he does watch television. (TR 370). He stated that his wife has to remind him to change clothes and to shave. Id. He stated that when he goes grocery shopping he cannot carry shopping bags. Id. He stated that his wife does this for him. Id. He stated that he does not do anything around the house, except for a little cooking and some dishes. (TR 370-71). He stated that he does not do laundry, vacuum, dust, take out the garbage, or do any yard work. (TR 371). He stated that he has problems grasping objects due to the numbness in his hands. (TR 373). He explained that he has to use both hands to carry a milk carton so that he does not drop it. Id. He stated that he has dropped things in the past. Id. He also stated that he could pick up a coin or paperclip from a table, but with "quite a bit of difficulty." Id. He stated that both hands are a problem, but his left hand is worse. Id. He explained that the radiculopathy in his right leg causes him stability problems and that is why he falls. (TR 374). He stated that he falls about half a dozen times in any given week. Id.

   Plaintiff stated that at his current job as a K-Mart greeter he sits in a chair. (TR 371). He stated that if he were given the option to sit or stand, he still does not believe that he could work an eight hour day. Id. He explained that he falls and has bladder and bowel control problems. (TR 371-72). He stated that this happens when he over exerts himself and when he works his full four hour shift at K-Mart it happens as well. (TR 372). He stated that as a greeter he is given the option to lie down and does so once or twice during his shift for fifteen to twenty minutes. Id. He stated that he empties his bladder six or eight times a day on a normal basis and that it does not usually vary when he goes to work. (TR 372-73). However, without exertion he has one to two bowel movements a day, compared with three to five bowel movements with exertion. (TR 373).

B.  **MEDICAL EVIDENCE**

Examination of the parties' cross-motions for summary judgment reveals that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[4]

C.  **VOCATIONAL EXPERT'S TESTIMONY**

G. Robert Horvath, a vocational expert [VE], testified at the hearing. (TR 375-80). The VE categorized Plaintiff's past work as follows: mechanic in a service station, medium and semiskilled; tow truck driver, heavy and semi-skilled; and mechanic, very heavy and skilled.[5] (TR 378). The VE stated that there were transferable skills such as "[t]he use of tools, hand tools, power tools." (TR 379). The VE also stated that the use of instructional manuals and diagnostic skills would all be transferable. Id. Further, the VE stated that the ability to estimate the cost of repairs and explain the problems "to customers, training personnel, [and] itemizing work orders," would also be transferable skills. Id. The ALJ presented a hypothetical question to the VE in which a claimant with Plaintiff's age, education, and work experience and assuming

> [a] lift, carry, and push/pull limit is ten pounds. The individual requires the option to sit or stand at his election. No climbing of ladders, ropes, or scaffolds. Occasional climbing of ramps and stairs. No crouching, crawling, or kneeling. Occasional stooping, balancing, twisting. No unprotected heights, hazardous machinery, or driving. No right lower extremity controls. No remembering or carrying out detailed instructions. Occasional interaction with the general public and with co-workers and supervisors. And, lastly, occasional fine manipulation with the left hand.

---

[4]See Subpart E., supra.

[5]The VE testified that the managerial aspect of the mechanic position was also skilled, although the managerial aspect would typically be light exteriorly. (TR 378-79).

Id. The VE testified that Plaintiff was not capable of doing his past relevant work under the restrictions and that none of his skills would transfer to jobs with the same restrictions. (TR 379-80). The ALJ asked whether unskilled work was available for a claimant with those restrictions in the region. Id.

The VE stated that there were unskilled and sedentary occupations assuming no transferable skills that would include a sit/stand option. Id. Specifically, he identified the following positions in the light exertion category: grating and sorting, 2,000 positions; inspecting, examining, checking, 4,000 positions; packaging, 2,500; surveillance monitor, 1,200; clerical with limited interaction, 1,500 positions; and assembly, 2,000 positions. Id. The VE stated that these jobs also meet the hypothetical requirement of occasional fine manipulation with the left hand. Id. Further, the VE testified that "[t]here are also 3000 [sic] general light labor jobs which are at the sedentary level and which also offers [sic] a sit/stand." Id.

The ALJ added the restriction of a need to "recline for two to three hours during the workday." Id. The VE testified that the additional restriction would preclude the jobs just listed. Id.

### D.     ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found "that [the claimant] has lumbar spondylosis with degenerative disc disease, L5-S1 radiculopathy and neuropathy, dysthymic disorder, and panic disorder with agoraphobia," impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (TR 21, 30). The ALJ found Plaintiff not to be fully credible. (TR 28, 30). Thus, he determined that the Plaintiff had the residual functional capacity [RFC] to perform a significant number of jobs in the national economy. (TR 29-31). Therefore, the ALJ concluded that Plaintiff is not eligible for disability. (TR 32).

### E.   ANALYSIS

Plaintiff advances several claims in his Motion for Summary Judgment. His Motion argues that the ALJ's decision is not supported by substantial record evidence because: (1) the ALJ did not give deference to the treating physician; (2) the ALJ did not give deference to the treating psychologist; and (3) the ALJ did not properly assess Plaintiff's credibility.[6] In response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[7]

#### 1.   Standard of Review

This Court's review of the ALJ's conclusions is limited. The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g) (1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).

This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see also Thacker v. Comm'r

---

[6] Plaintiff's Motion for Summary Judgment and Brief filed November 18, 2004 (hereinafter "Plaintiff's Brief"), at pages 6-19. Plaintiff filed a Reply Brief on February 22, 2005.

[7] Defendant's Motion for Summary Judgment and Brief filed February 1, 2005 (hereinafter "Defendant's Brief"), at pages 14-19.

of Soc. Sec., 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished). Applying these standards, I will analyze each of Plaintiff's claims.

### a. Treating Physician

Plaintiff alleges that the ALJ did not give the proper weight to his treating physician, Beverly Zelt, M.D.'s, opinion and substituted his own medical opinion.[8] This Court is well aware that the medical opinions and diagnoses of treating physicians are entitled to substantial deference, particularly if those opinions are uncontradicted. King v. Heckler, 742 F.2d 968, 974 (6th Cir. 1984).

> The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.

Bankston v. Comm'r of Soc. Sec., 127 F.Supp. 2d 820, 824 (E.D. Mich. 2000). However, such deference is due only if the treating physician's opinion is based on sufficient medical data. See 20 C.F.R. § 404.1529. It is often misunderstood that the determination of disability is the prerogative of the Secretary, and not the treating physician. Kirk v. Sec'y Of Health & Human Servs., 667 F.2d 524, 538 (6th Cir. 1981); Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 855 (6th Cir. 1986); 20 C.F.R. § 404.1527. An ALJ may reject a physician's opinion when it is brief, conclusory, or not supported by medically acceptable clinical or laboratory diagnosis techniques. 20 C.F.R. § 404.1527(d)(2). Accordingly, treating physicians' opinions must be grounded on objective medical evidence, and no deference need be afforded those opinions if they are simply conclusory. Houston v. Sec'y of Health and Human Servs., 736 F.2d 365, 367 (6th Cir. 1984);

---

[8]Plaintiff's Brief at pages 6-14.

Duncan, 801 F.2d at 855 (citing King, 742 F.2d at 973).  In other words, the weight to be given a doctor's opinion by an ALJ will depend on the extent to which it is supported by "specific and complete clinical findings."  Giddings v. Richardson, 480 F.2d 652, 656 (6th Cir. 1973).  See also Cutlip v. Sec'y of Health and Human Servs., 25 F.3d 284, 287 (6th Cir. 1994) (citing Young v. Sec'y of Health & Human Servs., 925 F.2d 146, 151 (6th Cir.1990)).

Nevertheless, if an ALJ does reject the opinion of a treating physician, he or she must give "good reasons" for doing so.  Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, (6th Cir. 2004). The ALJ stated that

> despite her opinion that claimant canto engage in substantial gainful activity due to pain, Dr. Zelt did not find the claimant disabled form performing all work-related functions (Ex. 16F).  Generally, the opinion of a treating physician is entitled to controlling weight if such opinion is supported by medically accepted objective findings and is not inconsistent with other material evidence of record.  However, in the instant case, Dr. Zelt's opinion is based largely on the degree of pain alleged by the claimant.  Although she finds that the claimant's subjective complaints are consistent with the objective medical findings, the undersigned finds that there is material evidence in the record which casts doubt on the level of pain alleged by the claimant.  First, the claimant was seen by Dr. Steven W. Huder on March 9, 1998.  Dr. Huder indicated upon examination that the claimant's physical presentation was "a bit confusing and contradicts itself at times.'  He noted signs of guarding and "giveaway" weakness  during his physical examination.  On May 11, 1998, upon reviewing the EMG report, Dr. Huder confirmed Dr. Zelt's diagnosis, however, he indicated that the claimant's work-up had been negative for causes (Ex. 23F).  Secondly, Dr. Marshall noted in his psychological evaluation dated November 6, 1996 that the claimant suffered from hypochondrias.  He indicate that the claimant exhibited "a broad tendency to magnify the level of experienced illness or  a characteristical inclination to complain and to be self pitying" (Ex. 14F).

(TR 24).  Nonetheless, in Wilson, the Sixth Circuit found that

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion. Id.

Wilson, 378 F.3d at 544. Here, the ALJ focused only on the level of pain alleged and not the specialization of Dr. Zelt,[9] the length of treatment, frequency of examination, nor the treatment relationship under Wilson.

Further, the ALJ stated that "Dr. Huder confirmed Dr. Zelt's diagnosis," but nevertheless focused on the negative portions of Dr. Huder's report without reference to the positive medical findings.[10] For instance, in a March 31, 1998, report quoted by the ALJ,[11] Dr. Huder stated that "there is some non-sustained clonus bilaterally in the ankles with his sensory exam quite diffusely abnormal, making a diagnosis of radiculopathy versus a spinal cord abnormality more difficult to discern."[12] (TR 313). Further, in the same May 11, 1998, report cited by the ALJ, Dr. Huder stated, "[p]ainful lumbosacral area and vertebral bodies were noted as before, and vibration was decreased in the feet bilaterally." (TR 319). Although an ALJ is not required to discuss each and every piece of evidence, he or she "may not pick and choose the portions of a single report, relying on some and ignoring others, without offering some rationale for his decision." Young v. Comm'r of Soc. Sec., 351 F.Supp.2d 644, 649 (E.D.Mich. 2004).

Additionally, Plaintiff argues that the use of Dr. Marshall's opinion to defeat Dr. Zelt's opinion is misplaced.[13] As Plaintiff points out, Dr. Marshall is a psychologist, whereas Dr. Zelt is a specialist

---

[9] Dr. Zelt stated that she specializes in Anesthesiology with added qualifications in pain management. (TR 227).

[10] Plaintiff's Brief at pages 10-11.

[11] The ALJ refers to this report, although he does not mention the March 31, 1998, date; rather he just states that Plaintiff began seeing Dr. Huder on March 9, 1998. (TR 24). However, it is clear that the ALJ reviewed this report because he quotes Dr. Huder's language from same. (TR 24, 313).

[12] Plaintiff's Brief at page 10.

[13] Plaintiff's Brief at page 13.

and under 20 C.F.R. § 404.1527(d)(5), the opinion of a specialist is entitled to greater weight than a non-specialist. Therefore, the ALJ's decision is not supported by substantial evidence, as it relates to the rejection of Plaintiff's treating physician's opinion.

### b. Treating Psychologist

Plaintiff alleges that the ALJ did not properly credit the opinion of his treating psychotherapist, Linda Huffman, M.S.W., C.S.W.[14] The ALJ pointed out that Dr. Huffman only had her Masters in Social Work and rejected her opinion. (TR 26). An ALJ *may* consider the opinion of a social worker under the regulations. See 20 C.F.R. § 416.913(a); 20 C.F.R. § 416.913(e) (emphasis added).

First, Plaintiff argues that because the ALJ used Dr. Marshall's opinion, that of a mental health professional in an attempt to discredit Dr. Zelt, he cannot at the same time reject the opinion of a social worker.[15] However, Dr. Marshall does have his Ph.D. in psychology. (TR 223). The Sixth Circuit has found that "[t]here can be little doubt that Congress intended that findings of a psychologist are sufficient to establish that a mental impairment has been 'medically' determined." Crum v. Sullivan, 921 F.2d 642, 645 (6th Cir. 1990). Therefore, the fact that the ALJ rejected one mental health professional, while relying on another, was not improper given the regulations and caselaw, as it relates to the different fields and degree levels within the profession.

Second, Plaintiff alleges that other opinions of record support Ms. Huffman's opinion that Plaintiff has an affective disorder and her findings that he has moderately severe impairments in several

---

[14]Plaintiff's Brief at pages 14-18.

[15]Plaintiff's Brief at pages 13-14.

areas.[16] The ALJ carefully discussed Plaintiff's alleged mental impairments including the opinions of Ms. Huffman, Dr. Marshall,[17] Dr. Parado, and DDS consultant Dr. Higgins, as well as a DDS mental residual functional capacity assessment. (TR 25-27). The ALJ took these opinions into account in assessing Plaintiff's RFC and found that "due to his [] mental impairments, the claimant is limited to occasional interaction with the general public, co-workers and supervisors, and cannot remember or carry out detailed instructions." (TR 28).

Further, the ALJ noted as Defendant points out, that Ms. Huffman indicated Plaintiff's progress had improved and his GAF went from a 35 up to 60, "indicating the highest number in the range for moderate, as opposed to, mild limitations."[18] (TR 272, 273). The ALJ found that a later mental capacity assessment by Ms. Huffman stating that Plaintiff had "marked impairments in various areas of functioning," was inconsistent with these reports of improvement. (TR 26). Where a treating source contradicts him or herself, such an opinion is not entitled to deference. See Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 240 (6th Cir. 2002). Further, "the ALJ may dismiss a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict." Tyra v. Sec'y of Health & Human Servs., 896 F.2d 1024, 1030 (6th Cir. 1990).

Therefore, because the ALJ was not bound by the medical opinion of a social worker under the regulations and further, where the social worker's findings were inconsistent with her progress notes, the ALJ was entitled to reject the opinion of same.

---

[16] Plaintiff's Brief at page 14.

[17] The ALJ again noted that Plaintiff suffered hypochondrias and "exaggerated" his symptoms. (TR 25).

[18] Defendant's Brief at pages 17-18.

15

### c. Credibility

Lastly, Plaintiff alleges that the ALJ's credibility finding was incomplete.[19] In order to determine disability based on subjective complaints and limitations, there must be a two prong analysis.[20]

> [T]he court explained this standard: "In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so then, 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain."

McCoy on Behalf of McCoy v. Chater, 81 F.3d 44, 47 (6th Cir. 1995) (quoting Stanley v. Sec'y of Health and Human Servs., 39 F.3d 115, 117 (6th Cir.1994) (citing Jones v. Sec'y of Health and Human Servs., 945 F.2d 1365, 1369 (6th Cir.1991) and (quoting Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 853 (6th Cir.1986)).

> When determining credibility, in addition to the objective medical evidence, the ALJ must also consider:
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 minutes to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Ridge v. Barnhart, 232 F.Supp.2d 775, 790-91 (N.D. Ohio 2002). Although the ALJ's credibility determination is "to be accorded great weight and deference," Walters v. Comm'r of Soc. Sec., 127

---

[19]Plaintiff's Brief at pages 18-19.

[20]Plaintiff's Brief at pages 18-19.

16

F.3d 525, 531 (6th Cir.1997) (citation omitted), "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994) (citing Auer v. Secretary of Health & Human Services, 830 F.2d 594, 595 (6th Cir. 1987). In addition, the court recognizes that "[i]t is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review. Zblewski v. Schweiker, 732 F.2d 75, 78 (7th Cir. 1984)." Hurst v. Sec'y of Health and Human Servs., 753 F.2d 517, 519 (6th Cir. 1985). As Social Security Ruling (SSR) 96-7p points out, the ALJ's "determination or decision must contain specific reasons for the finding on credibility . . . to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." See also Murray v. Comm'r of Soc. Sec., 2004 WL 1765530, *4 (E.D.Mich. Aug. 3, 2004) (slip copy).

>In the present case, the ALJ stated in his findings that
>
>[t]he claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the claimant's own description of his activities and life style, the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the claimant's demeanor at the hearing, the reports of the treating and examining practitioners, the medical history, the findings made on examination, and the claimant's assertions concerning his ability to work.

(TR 28). While it is true that, "ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference," Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted), the ALJ has a duty under Duncan and its progeny to make findings regarding the aforementioned factors, which is absent here.

Although the ALJ does go through Plaintiff's complaint and testimony quite thoroughly, he fails to distinguish between what he finds to be credible or incredible. (TR 27-28). Rather, he makes generalized statements regarding "discrepancies," which go unidentified in any specific manner. (TR 28). Meaningful appellate review is therefore impossible. The ALJ is required to set forth the reasons

17

for his decision pursuant to 20 CFR § 404.953(a) and failed to do so regarding Plaintiff's credibility; therefore, substantial evidence does not support his decision in this regard.[21]

### 2. Remand Versus Benefits

The remaining issue is whether remand or an award of benefits is the appropriate remedy for Plaintiff. It is firmly established that under § 405(g), a court may remand for an award of benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec. of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994)(citations omitted). More specifically, "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

Here, the ALJ's adverse decision was deprived of substantial evidentiary support because he improperly rejected the treating physician's findings and the Plaintiff's credibility. All of the factual issues have not been resolved. An award of benefits would be premature, as the ALJ may be able to reconcile his findings with proper application of the relevant case law and regulations mentioned upon remand.

## III.   CONCLUSION

For the reasons stated, I respectfully recommend that the court **GRANT** Plaintiff's Motion for Summary Judgment **IN PART**, **DENY** Defendant's Motion for Summary Judgment, and **REMAND** this case to the Defendant Commissioner for further proceedings consistent with this Report.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific,

---

[21]As Plaintiff notes in his Reply Brief, Defendant Commissioner fails to challenge Plaintiff's argument regarding the ALJ's credibility finding. Plaintiff's Reply Brief at page 5.

written objection within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.


s/Wallace Capel, Jr.
**WALLACE CAPEL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**Dated:**  July 28, 2005

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2005, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Janet L. Parker, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Evan A. Zagoria, 30200 Telegraph Road, Suite 200, Bingham Farms, Michigan 48025, and the Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606.

                                              s/James P. Peltier
                                              United States District Court
                                              Flint, Michigan 48502
                                              810-341-7850
                                              E-mail:   pete_peltier@mied.uscourts.gov